Good morning, Your Honors, and may it please the Court. Deputy Attorney General Scott Fudale appearing for Secretary Matthew Cate. If it pleases the Court, I'd like to reserve three minutes for rebuttal. This case is a classic example of a district court's disregard for the principles of federalism. Here, the district court ignored longstanding Supreme Court precedent in monitoring federal courts not to become involved in the minutia of prison operations, and instead reviewed a discretionary administrative segregation housing decision, de novo. And the Court did so notwithstanding a want for jurisdiction in this instance. Accordingly, defendant requests that this Court vacate the district court's judgment. I will address the mootness issue first. Mr. Lira was discharged from custody in March of 2008, yet the Court held trial in early 2009. This Court has held in both the Dilley and the Reimers case that an inmate's claims for injunctive and declaratory relief become moot upon their release from custody. Plaintiff has argued that the ---- May I ask a rather practical question? I may or may not have anything to do with it. Is this case really about attorney's fees at this point? I mean, because basically he wants a declaration that he was not a gang member, which doesn't seem to be terribly unreasonable or undoable, but it seems to me that the sticking point may be the attorney's fees. Is that what really is going on here? That's incorrect, Your Honor. That's fine. This case has some widespread implications, especially the district court's review of the sum evidence standard, which I will get into, and whether the Court has standing to address a case like this. So we are concerned that, you know, this will set bad precedent if this case continues with the judgment standing. Back to the mootness issue, Your Honors. Plaintiff has alleged and argued in trial that the collateral consequences doctrine applies to keep this case alive. This Court has held in the PUC case that collateral consequences must be legal in nature, not merely non-legal speculative consequences. And indeed, in this case, Mr. Lear isn't saying that he has legal consequences, that he will, for example, not be able to serve on a jury or will have not be allowed to vote because of his gang validation. Rather, he talks about much more speculative consequences, the effect of the validation on his mental health and gang reprisals. And the Court, the Supreme Court in Spencer has held that in that case it was a parole revocation decision, and the Court held that the potential denial of parole, increased sentencing and impeachment were all insufficient, too speculative to constitute collateral consequences. The same holds here. Mr. Lear is talking about potential effects, beneficial effects to his mental health, although the record shows that because Mr. Lear suffers from paranoia, he will still suffer from those. Well, if he has two psychiatrists say that this will have a big impact on whether he gets better or not, isn't that a consequence that we should consider? Well, no, Your Honor. And the reason being in this, both the Supreme Court and the Eighth Circuit have visited this issue and held that emotional interest in a lawsuit is not enough to overcome moodness. It's not enough to constitute standing under Article III. So that wouldn't be something that the Court would consider. And this isn't quite the same as interest in a lawsuit. He's saying he's suffering harm, that a declaration would help. It's a somewhat unique allegation, but as opposed to the cases where it's just rank speculation, there's some testimony here. There's some expert testimony that the district court credited. Well, there's also some contrary expert testimony from our expert. And if you look at the record, plaintiffs' experts really testified as to the beneficial effect they related cases such as human rights violations or wrongful convictions and tried to analogize the two. There's been no studies that's definitely shown in the record that a gang validation or a wrongful placement inside confinement can somehow be mitigated by a favorable judgment. But there's expert testimony that says it can and it will be. So how could we just ignore that? Well, Your Honor, I think, again, I think that the testimony from the – from our expert and also the district court. The district court apparently thought that their – his experts were more persuasive, and we're bound by that, are we not? Well, the court would review the record for the findings of fact for clear error in this case. But I submit by looking at the expert's testimony and how it was analogized to in opposite situations and defendant's expert testimony, I think there is error in that judgment, in that decision. Well, let's assume that there's not, because I don't think we really want to quibble We're going to decide between your experts here. But let's assume that the – let's assume the district court's correct. What then? Well, even if the district court is correct, this Court finds that there is standing, the – that really kind of leads into my second point, that this – the way this case was adjudicated, it was incorrect under the law. Indeed, in – well, first of all, if I can address one issue, it's the sum evidence standard, and we raised this in a recent 28-J letter to the Court, we believe has been – is no longer applicable to administrative segregation confinement settings. The recent Supreme Court decision in Swarthout held that under the due process clause, all that is required is notice and opportunity to be heard. There is no substantive review required. In Wilkinson, the Supreme Court analogized parole decisions with administrative housing decisions. So it logically follows that. Yeah, unless there's a stated criteria, and Justice Ginsburg's dissent, I think, pointed that out in Swarthout. Is there – I gather that there's a little more of a criteria here than there for segregation in administrative housing, but not. True? Well, Your Honor, there is criteria, but it's very subjective, similar to a parole decision. But that's what this case is all about. You know, you use the criteria of designating – or the prison did to designate him as a gang member, and he said it's not true. It's not – it's not particularly the same as a purely discretionary decision, although there are elements of discretion, I grant you, in the decision. Well, I think the – I'm not quarreling with you. I'm just saying it's – isn't this more like Justice Ginsburg's concurrence, I should say, in Swarthout? Point raised there, or? Well, I disagree, and this is why, Your Honor. I think that prison administrative housing decisions are – while there is some criteria for, in this instance, what constitutes a gang member or gang activity, it is largely discretionary, and it relies a lot upon the investigator's knowledge of gang activities, their communication, and their say, what constitutes gang involvement. And it's very similar to a parole decision. It's a very fact-based decision based on a prison gang investigator's background and experience. It's not something that they have to follow a mandatory set of procedures, and that's it. Would you just tell me again as to what this case is really about, then, why you're appealing? If it's not about fees, you're – you feel that you're hurt by the judgment that has been answered? Is that the point? Yeah. I think, Your Honor, our – What way, since he's out? Well, I think the case sets bad precedent, and this is why we really find that this Court has to make a decision here. And the reason being, we feel that the district court erred in its application of the sum evidence standard, assuming that it applies. The district court's judgment isn't precedent at all. Well, it's self. It's persuasive authority, yes, Your Honor. But there has – it has been used, I can say from personal experience, on other cases where inmate cases have cited the case as an example of what does not constitute sufficient evidence under the Due Process Clause. And we're concerned that if district courts continue to engage in such an analysis, that it will really have widespread implications for prisons, that they'd really have to conduct almost like trial-like proceedings in order to – before validating inmates into segregation. Well, we get those cases all the time, though. I mean, it's particularly for the Eastern District, where someone says, I was put in AG-SED and AG-SEG, and you didn't give me a hearing. And that's at the core of what this is all about. And he contests, of course, the justification of it, but that's part of what's going on here. And he said, you put me in there for 8 years. And the district – he persuaded the district court that he was right, that he was wrongfully segregated for 8 years. Right? Well, that's correct. I mean, he persuaded the district court. I'm not saying we've reached any judgment. We haven't. I haven't talked about it. But why – you're saying this is terrible, it's horrible, it's, you know, we're going to get all these suits. And we do get the suits. We get them now. I don't understand what's so unusual about this, except that he's been dismissed – he's been released from prison. Well, I think what's a little bit unusual, Your Honor, is most of these cases, Your Honor probably knows, do not make it to the trial level. They usually resolve on summary judgment. Of course. And this case went to the trial – went to trial. And the application of the sum evidence standard, I feel, was an error. And if district judges continue to apply it in that way, it will create much more burdensome administrative proceedings. For example, in this case, the district court allowed, you know, expert testimony, allowed an inmate to testify who had never before been presented to prison officials, compared to reports from a county jail officer. This isn't what the Supreme Court requires under Hill. What the Hill standard is, is that the court should look for the record and find any evidence in there that supports the conclusion. The court is not supposed to bring in evidence that was never brought before the prison administrators prior. Well, here's the – my difficulty, and maybe you can help me out with it, but it's kind of a chicken-and-egg situation, because the prisoner, the prior prisoner has to show that there's some collateral consequence. So therefore, you've – that's your argument. And so he says, all right, I'm bringing in some expert testimony to show collateral consequence. And then he's got to show prejudice from the lack of a due process hearing. So he brings in evidence that shows that, yes, I was prejudiced because I didn't have a hearing, because here's what I would have shown. And if we take those two points, with your theory, it means that you – that a prisoner can't ever show those two things because you have to stick with the four corners of the administrative record. Am I missing something? Well, Your Honor, I think there's a distinction. If the inmate's bringing in expert testimony merely to overcome mootness, that would be a bit different than if an inmate, in this case, Mr. Lear, brought an expert testimony to actually challenge the substance of a gang validation decision to explain why prison administrators got it wrong. That same expert was never presented to prison administrators, so they didn't have an opportunity to decide. Well, that's all true. But if – don't you have to show that kind of evidence in order to show prejudice from the denial of a due process hearing? Well, no, Your Honor. I think that the record, the administrative record itself should be sufficient. That's really what the judge should be looking at. How do you give a – how can you have an administrative record that's sufficient if the claim is that there was a denial of a hearing, so I couldn't make a record? Well, if he had no evidence, I suspect he'd be here saying, look, he didn't show any evidence that would have been any different, so it's harmless error. I mean, we've heard those kind of arguments before and we've credited him. So, I mean, it's – I understand your point, but it seems to me, and I understand you're making it in connection with some evidence standard. But on these kinds of cases, I'm just asking the question because it seems to me it's kind of a catch-22. He's – the petitioner's got to show this harm, he's got to show prejudice. And you're saying if he does, then the district court errs in going outside the administrative record. I think the – I think the inmate could show prejudice just based on the administrative record, based on his testimony. I don't think – I think when we're actually – and I'm focusing more on the evidence and the prejudice and the procedural aspect of it. But when you're looking at – when you're looking at, you know, what evidence constitutes some evidence under the some evidence standard, and the Seventh Circuit addressed this in the Hamilton case, you can't go out the administrative record, because if you do, it no longer becomes a standard of review. It becomes de novo. I take your point on that, yes. So I see that my time's up, and I'd like to reserve the remaining time for rebuttal, if that pleases the Court. May it please the Court. My name is Mark White, and I'm appearing this morning on behalf of the plaintiff and ability, Ernesto Lira, to take these issues or arguments raised by CDCR's counsel, pretty much in the order presented. I want to speak first and preliminarily about the subject of mootness. We submit that CDCR has the basic jurisprudence on this doctrine wrong here. It's applied in this case. The question about adverse consequences, collateral consequences post-discharge, as supporting mootness or not, whether they have to be legal in nature, the rule – and this comes from the Supreme Court's decision in Spencer v. Kemnum – is that legal disabilities post-discharge create a presumption of adverse consequence to support mootness, but you can have non-legal adverse consequences that still produce that same result and justify standing. There's just no presumption that accompanies the – or supports the showing. You have to demonstrate that the consequences are real. They're not speculative, that they're adverse. And once you do that, then the consequences, legal or not, avoid mootness. And this Court, there are a number of decisions establishing this rule, including decisions from this Court dating back to the Robbins v. Christensen case, I believe from 1990, over 20 years ago. That was a case in which an inmate had sought to challenge a disciplinary finding of drug use during custody. Post-discharge, an argument was raised about the non-legal nature of that adverse consequence, but the Ninth Circuit in that decision ruled that the potential prospect of adverse employment consequences from that disciplinary finding that was challenged by the inmate was sufficient, though thoroughly non-legal in character or quality, to support continued standing and avoid mootness. Here we have adverse collateral consequences post-discharge that are not speculative at all. The most serious of them – there are two – the most serious are Mr. Lira's diagnosed mental disorders that he was caused by his years of confinement at Pelican Bay. The fact... Do we have a case that goes so far as to say that emotional harm, mental harm is enough as a collateral consequence? I don't know that we have a case directly on this point, and I would distinguish between emotional harm, which can run quite a gamut or continuum, and diagnosed mental disorder. So there are case authorities that talk about how if a result by judgment or declaratory relief represents simply an emotional win for the plaintiff, that's not sufficient. Here we're talking about something fundamentally different and more serious. Well, is that mental – this is what I was a little uncertain about – is that mental disorder that you're talking about attributable to being in solitary confinement for eight years, or is it attributable to his being wrongfully – being labeled the gang member and therefore he shouldn't have been in there? Because everybody's going to be affected adversely by eight years in solitary confinement, I would think, whether rightly or wrongly. I would expect so. In Mr. Allura's case, according to the expert psychological testimony that was deduced at trial, his eight years of confinement at Pelican Bay was the cause both of his diagnosed clinical depression and his diagnosed post-traumatic stress disorder. He also has a very serious sleep disorder that's a component of his depression that was also sourced, according to the expert testimony in that experience. The plaintiff's psychological experts who testified, both Dr. Good, the clinical psychologist, and Dr. Lizes in this area, and has for years, made clear that a critical component of Mr. Allura's mental disorders from that experience were sourced in the wrongfulness of his confinement. That was a very real and important element of the experience that produced these disorders as he continues to suffer from to this day. And that's a critical aspect, not just in terms of how this was caused, but in terms of the potential beneficial or salutary effect of the relief that was sought. Because as the experts explained in their testimony, one of the things that Mr. Allura needs to do now to try and reconstruct his life post-discharge is to come to grips with this terrible injustice that was done to him, this terrible suffering. And the anger that he has over that, thoroughly natural human reaction to an ordeal of this sort, is something that he has to overcome as a part of that, and a judicial declaration, an official determination that this was a wrong done to him, according to both Dr. Good and Dr. Haney, will have some beneficial effect in helping Mr. Allura deal with this experience and get past it. If we hold that that is a sufficient collateral consequence, doesn't that really open the door to a lot of post-prison litigation about what happens in prison? Because there are a lot of wrongs at prison that people like to or are angry about and want to address. Well, you certainly have to get the expert testimony, of course, but, I mean, that's a, I think the State has a point that this really could open up a lot of potential for litigation. Well, a prison inmate needs more than difficult experience in prison to have a lawsuit. There needs to be a violation of constitutional rights here, here, to turn to the merits  of the system. I mean, if you look at the history of the system, you had a wrongful validation, a validation that was conducted entirely in secret from Mr. Allura. When it occurred back in 1993, he didn't even learn about the validation until two and a half years later when he returned to the system in the latter part of 1995. And in all the years subsequent to that, in the repeated annual ICC classification reviews and multiple or serial 602 appeals that Mr. Allura filed, nothing at all was done to seriously consider or investigate or correct the wrongful procedural irregularity that was that validation. And the evidence that was used and has been relied on now all of these years to support the validation as the evidence showed at trial does not support the validation even under this minimal sum evidence standard. What's your response to the government's argument on that sum evidence that the judge went too far in analyzing the evidence and so forth? Well, we disagree with that. We think that, again, the case authority makes clear that under the sum evidence standard, the court is authorized to consider all relevant admissible evidence that bears on the probative significance of these evidence items and their reliability. And the notion that a district court in review is limited simply to the information that is collected or gathered in the course of their investigation. But can the district court go and say, well, they were wrong, they had this evidence, but it was turned out to be not right? Can that be done under the sum evidence? That can be done as well. That speaks to a different argument they make, but they're wrong about that argument as well, yes. And, again, the cases, we've cited and discussed them in our papers. Do you think Swarthout changes anything? No, I don't. And I can answer. No, go ahead and finish answering your question. Hold that thought, if you will, Your Honor. Because I want to say something about it. I want to say something distinguishing, I hope, about Swarthout momentarily. But, no, there are case after case in which Federal courts have looked at the case and have disagreed as to its reliability or its probative significance. Again, we've cited case by case and situationally different, but cases in which the court would look at a crude sketch that places an inmate near the scene of a yard prison riot that was relied on by correctional authorities, and the court says that's not some evidence, it's too equivocal, it's too ambiguous. Right. But that's still within the four corners of the administrative. It is, but it speaks to, I believe, Judge Adelman's question as to whether a district court can second-guess. I think that's the pejorative reference in the appellant's briefing. The answer is yes. The district courts not only are permitted but obligated under the sum evidence standard to reach its own independent evaluation of the evidence. It's an objective standard. It's an objective standard. There's no subjective component to it that affords any deference to an initial view by the correctional authorities. If the district court in its own review finds the evidence inherently or insufficiently reliable, or if it simply lacks probative significance because it's too ambiguous, it's inscrutable, it just doesn't have any meaning, it doesn't tend to make more sense to the district court.  I think that's the problem. Roberts. No, I understand your argument there. But maybe to follow up, I hope, on what Judge Adelman was asking, how far can a district court go, then, in your judgment, outside the four corners of the record to assess the substance of the evidence? I mean, it seems to me the State has a pretty good argument that you can't just retry all of these cases. You've got to look at the evidence that was presented and assess it. How far do you think the district court can go? I believe that the district court is authorized to consider any evidence that's presented. It's not the district court's burden to collect or marshal evidence. It's the burden of the plaintiff here, Mr. Lira, to marshal and offer evidence, if more evidence is available, that bears on any of this beyond what CDCR in this case itself ever bothered to collect or study in the course of the original investigation. But how far afield? I don't know that there's any way to describe that limit in some bright-line way. There are precedents, some of them from this court. Cato v. Russian, a case important to this appeal for several reasons. But in that case, the Ninth Circuit noted, among other evidence that supported the plaintiff inmate's claim against validating evidence in that case, noted that there was a subsequent polygraph test result that supported the plaintiff's case. We don't have that here or probably anything like that. But in situations where evidence, take this case, take the fourth evidence item that materialized in this case for illustration, this April 1, 1998, debriefing report about a cellmate assault, an alleged gang-directed cellmate assault by Mr. Lira that turned out to be entirely fictive. That evidence was, we submit at trial, thoroughly discredited by CDCR's own disciplinary records of a 115 disciplinary hearing over the only incident in Mr. Lira's entire Pelican Bay history that could have constituted that alleged cellmate assault that demonstrated it wasn't anything of the sort. Just a loud argument over some move-in space. And so when you have the drawing. I'm sorry. I want the drawing. Was that some evidence? No. Why not? Well, for a number of reasons. First of all, this drawing with imputed hidden gang-symbols turns out to be a very clear indication of the fact that there was a gang-directed gang-directed  And so the fact that they didn't have any hidden gang signals anywhere, they're not just. They reasonably thought it did, the corrections people. Can that be then sort of reversed? Can that be said, oh, they thought it did, but it turned out not to be right, so there was not some evidence. Is that how it works? No. Why not? I mean, they don't have to be right. They don't have to be right in their determination in order to satisfy the summed evidence standard. They don't have to be right, but the inquiry doesn't focus on the time frame and the information that obtained when the decision was first made. Right. But getting back to the drawing, for example. Yes. I think Judge Edelman's question was if they reasonably believed that this was a gang-related symbols, even if they were wrong, isn't that enough? No. No. Because, again, the standard is an objective standard. If the evidence from a full inquiry makes clear that these so-called imputed gang symbols are instead the most common generic and familiar symbols in popular culture here in California, certainly in the Central Valley, these are things like the Huelga bird, the number 14, which according to the testimony, I think by consensus, even CDC are experts in this. They're experts related to this. There's no necessary gang imputation or significance to those symbols at all. And the fact that they might be associated with the northern structure, the district court found, on expert evidence, is simply too ambiguous or equivocal to satisfy the summed evidence standard, and there were other problems with that evidence item. It was imputed to Mr. Lira as something that he made himself. It turns out he didn't make the drawing. It was made by somebody else entirely different, something that CDCR could have learned had they granted Mr. Lira the informal hearing prevalidation that he was entitled to under the 14th Amendment. He could have readily disclosed that to him. Okay. You have exceeded your time, then. I apologize. I'm sorry. We helped you. A couple of things I'd like to address, Your Honor. Your Honors. First would be the Mr. White's comments on the summed evidence standard, especially concerning being a district court, being authorized to consider all admissible evidence. I really direct this Court's attention to the Hamilton case in the Seventh Circuit. In that case, an inmate tried to bring in new evidence that he had never presented to prison authorities during his disciplinary hearing. And the Seventh Circuit held that that was insufficient. They would not consider that evidence. It's only evidence in the administrative record. The Cato decision in this case is an opposite. The Court looks at that decision, while in the procedural history the Court mentions that there was a later after-acquired polygraph test, it was not relied upon in determining that there was not some evidence there. The Court strictly stuck to the administrative record, and that's clear in Cato. And really here, the evidence shows clearly that the summed evidence standard has been satisfied. The standard is any evidence that could, could support the decision by prison administrators, not any evidence, you know, that based on a preponderant standard or something higher. Here we have four independent pieces of evidence gathered from four different prison locations showing Lira's involvement in the Northern Structure prison gang. That has to be enough under the summed evidence standard. If it's not, it really no longer becomes a deferential standard. It becomes a standard of review more akin to a civil proceeding than, than just a summed evidence standard. Also, Mr. White mentioned the procedural component, said that there was a secret validation and there was really nothing done at all to give Lira an opportunity to be heard. I invite the Court to look at the portion of the record dealing with Officer Piland, the gang investigator. He actually sat down with Mr. Lira, met with him, looked at the evidence and the arguments Mr. Lira made. Even instead in his testimony, he reevaluated the evidence and then came out with a written decision. Clearly, by then, Lira got his opportunity to be heard. And with respect to the secret validation issue, the Supreme Court in Lavosko has held that notice isn't required when you're conducting a criminal investigation. The prosecutor doesn't need to let the potential defendant know that, you know, he's being investigated. Similarly here, if prison officials were to tip off an inmate that they're being investigated for gang activity, fruitful pieces of evidence will be destroyed. So it needs to be kind of a secret process until the evidence has been compiled. Thank you. Thank you, Your Honors. The case just argued is submitted for decision.
judges: Adelman, Schroeder, Thomas